Linda GERKEN, et al., Appellants,

v.

MISSOURI DEPARTMENT OF SO-
CIAL SERVICES, FAMILY SUP-
PORT DIVISION, Respondent.

No. WD 75975.

Missouri Court of Appeals,
Western District.

Dec. 10, 2013.

Deborah S. Greider, John J. Ammann, Barbara J. Gilchrist, Amy N. Sanders, St. Louis, MO, for Appellants.

Chris Koster, Attorney General, Ronald R. Holliger, General Counsel, Jefferson City, MO, for Respondent.

Before Division II: MARK D. PFEIFFER, Presiding Judge, and JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges.

MARK D. PFEIFFER, Presiding Judge.

A class composed of pensioners ("Pensioners") of Missouri's Blind Pension Fund ("Fund") appeal from the Circuit Court of Cole County's ("trial court") partial judgment calculating damages. The trial court certified its partial judgment as final for purposes of appeal pursuant to Rule 74.01(b). We conclude that the partial judgment did not dispose of a distinct judicial unit and did not otherwise comply with our mandate on the most recent appeal of this case. Therefore, we dismiss the appeal and remand the cause to the trial court for further proceedings.

## Facts and Procedural History [1]

Pensioners brought suit in 2006 against the Missouri Family Support Division and the Director of the Department of Social Services (collectively, "Division") for declaratory relief and damages to recover unpaid benefits from the Fund. The case has twice been appealed and remanded. *See Gerken v. Sherman,* 276 S.W.3d 844 (Mo.App.W.D.2009) *("Gerken I"),* & *Gerken v. Sherman,* 351 S.W.3d 1 (Mo.App. W.D.2011) *("Gerken II ").*

In *Gerken II,* we concluded that the Pensioners' damages should have been limited by the five-year statute of limitations in section 516.120(2); that subsection 209.040.4 requires the appropriation to be based on the growth of funds for the year preceding the year in which the appropriation is made and passed; that on remand, prejudgment interest needed to be recalculated consistent with the trial court's new findings on damages; and that attorney fees should be revisited on remand after the recalculation of damages. 351 S.W.3d at 8, 10, 12, 13. Significant to this appeal, we also instructed the trial court:

> Upon remand, *once a claims process is developed* and individual pensioners are credited their claims, it can then be ascertained if the aggregate damage

---

1. The facts, issues, and holdings underlying this appeal may be found in *Gerken v. Sherman,* 276 S.W.3d 844 (Mo.App.W.D.2009) *("Gerken I"),* and in *Gerken v. Sherman,* 351 S.W.3d 1 (Mo.App.W.D.2011) *("Gerken II").*

award results in a surplus. It would then fall to the court to make a determination about the distribution of the surplus, such as whether such funds should revert to the pension fund or escheat to the state.

*Gerken II*, 351 S.W.3d at 11 (emphasis added) (internal quotation marks omitted).[2]

Upon remand from *Gerken II*, the trial court held a hearing, at which the parties filed a Stipulation of Facts and Statement of Contested Issues along with spreadsheet exhibits showing their proposed damage calculations. Thereafter, the trial court entered what it termed a "partial judgment" in which the damages, prejudgment interest, and attorney fees were awarded, but the remedy for the damage calculation was not resolved. In fact, the trial court admitted as much, by stating:

> This *partial judgment* resolves the accounting and liability issue, *but it does not resolve the issue of the establishment of a process for class members to submit claims or the disposition of a surplus that may exist after the claims process has been completed.* This court determines that there is no just reason for delay in the decision of these issues decided herein and therefore enters this Judgment as final for purposes of appeal under Missouri Rule 74.01(b).

(Emphasis added.) The trial court further ordered the parties to develop a mutually agreeable claims process; or if the parties were unable to agree, each was to file its own proposed claims process, and the trial court would hold a hearing on the matter to resolve any such dispute over the remedy.

Pensioners filed a motion for new trial or, in the alternative, to amend judgment, which was denied by the trial court.

Pensioners then appealed.

## Jurisdiction

■■■ This court has a duty to determine *sua sponte* whether we have jurisdiction to review an appeal. *West v. Sharp Bonding Agency, Inc.*, 327 S.W.3d 7, 10 n. 5 (Mo.App.W.D.2010). We acquire jurisdiction to review a case upon the trial court's issuance of a "final judgment." § 512.020(5). As a general rule, for the purpose of appeal, a judgment is final if it disposes of all parties and all issues in the case and leaves nothing for future determination. *ABB, Inc. v. Securitas Sec. Servs. USA, Inc.*, 390 S.W.3d 196, 200 (Mo.App. W.D.2012). If the trial court's judgment is not final, we lack authority to consider the appeal, and it must be dismissed. *Id.*

■■■ An exception to this general rule is found in Rule 74.01(b), which permits the trial court to designate as final a judgment "as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." "However, the trial court's certification of a judgment as final is not conclusive because we must independently determine if such judgment actually qualifies as a final judgment." *West,* 327 S.W.3d at 10 n. 5. "In doing so, we look to the judgment's content, substance, and effect." *Id.* at 10–11 n. 5 (citing *Gibson v. Brewer,* 952 S.W.2d 239, 244 (Mo. banc 1997)).

---

**2.** To the extent that the procedural history of *Gerken II* is similar to the procedural history leading to this appeal, we are sympathetic to the suggestion that a dismissal of the present appeal for failure to dispose of a distinct judicial unit might have also applied to the appeal in *Gerken II*. However, there is at least one major distinction between *Gerken II* and the present appeal: Here, the trial court has had the benefit of our mandate in *Gerken II*, which contained specific directives upon remand—directives that have not been fully addressed.

Upon remand, a trial court has a duty to proceed "in accordance with the mandate and the result contemplated in the appellate court's opinion." *Motor Control Specialities, Inc. v. Labor & Indus. Relations Comm'n,* 323 S.W.3d 843, 853 (Mo.App.W.D.2010) (internal quotation omitted). "The mandate serves the purpose of communicating the judgment to the lower court, and the opinion, which is a part thereof, serves in an interpretative function." *Pope v. Ray,* 298 S.W.3d 53, 57 (Mo.App.W.D.2009) (internal quotation omitted). "It is well settled that the mandate is not to be read and applied in a vacuum. The opinion is part of the mandate and must be used to interpret the mandate." *Frost v. Liberty Mut. Ins. Co.,* 813 S.W.2d 302, 305 (Mo. banc 1991) (internal quotation omitted). "When determining its authority on remand, the trial court should be guided by the mandate, but also by the opinion and result contemplated by the appellate court." *Bryant v. Bryant,* 351 S.W.3d 681, 687 (Mo.App.E.D.2011).

There are two types of remands: "(1) a general remand, which does not provide specific direction and leaves all issues open to consideration in the new trial; and (2) a remand with directions, which requires the trial court to enter a judgment in conformity with the mandate." *Gerken II,* 351 S.W.3d at 6. "When specific directives are provided to the trial court, the mandate itself is specific[,] and the trial court cannot modify, alter, amend, or deviate from the appellate court's judgment." *Motor Control Specialities, Inc.,* 323 S.W.3d at 853. "Whether the trial court followed the mandate is a question we review *de novo.*" *Gerken II,* 351 S.W.3d at 6.

The mandate in *Gerken II* remanded the cause to the trial court "for further proceedings, all in accordance with the Opinion of this Court herein delivered." Our opinion in *Gerken II* specifically instructed the trial court on remand to develop a claims process. The trial court did not follow this specific mandate instruction on remand. In fact, the trial court acknowledged that, while it resolved the accounting and liability issues, the "partial judgment ... does not resolve the issue of the establishment of a process for class members to submit claims or the disposition of a surplus that may exist after the claims process has been completed." "The trial court was obligated by the mandate and the corresponding opinion to act in accordance with the specific directions." *Pope,* 298 S.W.3d at 58. A trial court:

> risks error in doing less than the mandate requires. By failing to address all of the issues returned to the trial court upon remand, there is a substantial danger that the resulting judgment will lack finality. Put another way, a trial court's failure to complete its obligation under a mandate may prevent it from exhausting its jurisdiction over the case.

*Lombardo v. Lombardo,* 120 S.W.3d 232, 243 (Mo.App.W.D.2003) (internal quotation omitted).

While the trial court determined that "there is no just reason for delay in the decision of these issues decided herein and therefore enters this Judgment as final for purposes of appeal under Missouri Rule 74.01(b)," the trial court also directed the parties to confer and develop a mutually agreed claims process, but anticipated that the parties may not agree on the claims process, necessitating further hearings—and, perhaps, further appeals. Frankly, this case highlights the danger of piecemeal appeals.

A trial court's designation of a judgment as final under Rule 74.01(b) "is effective only when the order disposes of a distinct 'judicial unit.'" *ABB, Inc.*, 390 S.W.3d at 200 (internal quotation omitted). "Stated differently, even if the circumstances suggest that judicial economy could be promoted by certification of an interlocutory order as final, unless the interlocutory order disposes of a distinct 'judicial unit,' the order cannot be properly certified as final pursuant to Rule 74.01(b), rendering this court without jurisdiction to entertain an appeal from the order." *Id.*

The Missouri Supreme Court has defined the required "judicial unit for an appeal" as: "the final judgment on a claim, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim." *Gibson*, 952 S.W.2d at 244 (internal quotation omitted). "It is 'differing,' 'separate,' 'distinct' transactions or occurrences that permit a separately appealable judgment, not differing legal theories or issues presented for recovery on the same claim." *Id.* A "judicial unit" for purposes of Rule 74.01(b) is "the aggregate of operative facts which give rise to a right enforceable in the courts." *ABB, Inc.*, 390 S.W.3d at 201 (internal quotation omitted).

"A single judicial unit is the compilation of allegations seeking to enforce a single legal right, whether or not asserted in several claims or counts, *or as requests for multiple remedies.*" *Id.* (emphasis added). If a judgment "disposes of fewer than all of the issues *and remedies* as to a single claim, it is not an appealable judgment." *Shelter Mut. Ins. Co. v. Vulgamott*, 96 S.W.3d 96, 106 (Mo.App.W.D. 2003) (emphasis added) (internal quotation omitted). Thus, even if the trial court's partial judgment effectively determined the accounting and liability issues, the essential element of a remedy—development of the claims process to credit underpaid Pensioners and how to dispose of the surplus, if any—has not been determined.

*See ABB, Inc.*, 390 S.W.3d at 203. "[A] judgment that fails to dispose of all remedies asserted as to the same legal rights, leaving some legal rights open for future adjudication, is not a final judgment under Rule 74.01(b)." *Id.* at 202 (internal quotation omitted).

We conclude that we do not have jurisdiction over this appeal. "The purpose and policy behind [Rule 74.01(b)] is to avoid redundant review of multiple appeals based on the same underlying facts and similar legal issues." *Id.* at 204 (internal quotation omitted). This case lends itself to yet another future potential dispute over the remedy—the claims process—and a subsequent appeal from the ultimate remedy in this case would require us to engage in a "redundant review" and be antithetical to judicial economy. "[P]iecemeal appeals are oppressive and costly, and … optimal appellate review is achieved by allowing appeals only after the entire action is resolved in the trial court." *Davis v. St. Luke's Home Health Care*, 200 S.W.3d 592, 594 n. 1 (Mo.App.W.D.2006) (internal quotation omitted).

## Conclusion

Pensioners' appeal is dismissed. This matter is remanded for further proceedings consistent with this opinion. Specifically, the trial court is directed to resolve the remaining "judicial unit" issues for which its partial judgment recognizes it fails to resolve: the establishment of a process for class members to submit claims and which outlines the disposition of any future surplus.[3]

JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges, concur.

3. This is not to suggest that the actual distributions under the claims process must occur before appeal may be taken. To the contrary, this court is in the business of reviewing judgments that dispose of a distinct judicial unit and, oftentimes, before the remedy for the wrong has been implemented.